**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

| | | |
|---|---|---|
| John Yonce, as Personal Representative of the Estate of Katherine Yonce, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 1:15-cv-02547-JMC |
| v. | ) ) | |
| Ayaz Chaudhary and Georgia Gastroenterology, LLC, | ) ) ) | **ORDER AND OPINION** |
| Defendants. | ) ) ) | |

This matter is before the court pursuant to Defendants Ayaz Chaudhary and Georgia Gastroenterology, LLC's Motion for Summary Judgment (ECF No. 67). Plaintiff John Yonce, as Personal Representative of the Estate of Katherine Yonce, did not file a response in opposition. For the reasons set forth below, the court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 67).

### I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On September 28, 2015, Plaintiff filed an Amended Complaint alleging that Dr. Ayaz Chaudhary committed medical malpractice by deciding not to place a stent in Katherine Yonce's pancreatic duct during an endoscopic retrograde cholangiopancreatography (ERCP) procedure performed on March 12, 2012. (ECF No. 21; ECF No. 67-2 at 2.) Plaintiff's claims against Georgia Gastroenterology, LLC are based solely on the doctrine of *respondeat superior*. (ECF No. 21.)

Plaintiff alleges that Dr. Chaudhary's decision to not place a stent in Ms. Yonce's pancreatic duct during the procedure caused the following chain of events:

1) Ms. Yonce to suffer from severe post-ERCP pancreatitis from March 12-16, 2016;

1

2) leading to respiratory distress (ARDS) on March 16, 2016;

3) requiring her to be intubated on March 16, 2016;

4) leading to respiratory arrest and code on March 16, 2016;

5) leading to an anoxic brain injury on March 16, 2016; and

6) leading to her eventual death on July 13, 2016.

*See id.* The six-step causal chain of events is the basis of Plaintiff's claims against Dr. Chaudhary and his practice group.[1]

On December 1, 2017, Defendants filed a Motion for Summary Judgment asserting that Plaintiff has failed to bring forth sufficient evidence that Plaintiff's death/injuries were proximately caused by any alleged negligence of Defendants (ECF No. 67). Plaintiff did not file a response in opposition.

## II.  LEGAL STANDARD

Summary judgment is appropriate when the materials in the record show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]n ruling on a motion for summary judgment, 'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (per curiam)(brackets omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might

---

[1] Defendants deny that placing a stent in Ms. Yonce's pancreatic duct during the ERCP was required by the standard of care. (ECF No. 67-3 at 2; ECF No. 67-4 at 2.) Defendants acknowledge that an issue of fact exists regarding this allegation of a breach of the standard of care. (ECF No. 67-1 at 2.) However, Defendants state that there is no issue of fact on the required element of proximate cause "as Mr. Yonce's death/damages were undeniably causally related to a condition unrelated to any alleged post-ERCP pancreatitis and, therefore, Dr. Chaudhary's decision not to place a stent in Ms. Yonce's pancreatic duct. (*Id.*)

2

affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the nonmoving party, to survive the motion for summary judgment, may not rest on the allegations averred in its pleadings. Rather, the nonmoving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324.

### III. ANALYSIS

**A. Medical Malpractice – Proximate Cause**

Under South Carolina law medical malpractice lawsuits have specific requirements that must be satisfied in order for a genuine factual issue to exist. Specifically, a plaintiff alleging medical malpractice must provide evidence showing: (1) the generally recognized and accepted practices and procedures that would be followed by average, competent practitioners in the defendant's field of medicine under the same or similar circumstances, and (2) that the defendant departed from the recognized and generally accepted standards. *David v. McLeod Reg'l Med. Ctr.,* 367 S.C. 242, 247-48 (S.C. 2006); *Pederson v. Gould*, 288 S.C. 141, 143-44 (S.C. 1986); *Cox v. Lund*, 286 S.C. 410, 414 (S.C. 1985). Additionally, expert testimony is required to establish proximate cause in a medical malpractice case if outside the common knowledge of experience of a layperson. *Guffey v. Columbia/Colleton Reg'l Hosp., Inc.*, 364 S.C. 158, 163 (S.C. 2005) (citing *Bramlette v. Charter-Medical-Columbia*, 302 S.C. 68 (S.C. 1990)). In this matter, Defendants focus their Motion on the third required element: proximate cause.

In a medical malpractice action, even if the plaintiff establishes the standard of care, and that the defendant's care fell below that standard of care, "it is incumbent upon the plaintiff to establish proximate cause as well as negligence." *Armstrong v. Weiland*, 267 S.C. 12, 16 (S.C.

1976). The plaintiff must show that the defendant's breach of the applicable standard of care was the proximate cause of the plaintiff's injuries. *David*, 367 S.C. at 248. Negligence is not actionable unless it is a proximate cause of the injury complained of, and negligence may be deemed a proximate cause only when without such negligence the injury would not have occurred or could have been avoided. *Hughes v. Children's Clinic, P.A.*, 269 S.C. 389, 398 (S.C. 1977).

"In South Carolina, medical malpractice actions require a greater showing than generic allegations and conjecture." *David*, 367 S.C. at 249. Expert testimony is required to establish proximate cause in a medical malpractice case such as this one, as the issues are outside the common knowledge of experience of a layperson. *See e.g. Guffey v. Columbia/Colleton Reg'l Hosp., Inc.*, 364 S.C. 158, 163 (S.C. 2005) (citing *Bramlette v. Charter-Medical-Columbia*, 302 S.C. 68 (S.C. 1990)).

"[W]hen the opinions of medical experts are relied upon to establish causal connection of negligence to injury, the proper test to be applied is that the expert must with reasonable certainty, state that in his professional opinion, the injuries complained of most probably resulted from the alleged negligence of the defendant." *Armstrong*, 267 S.C. at 16. When expert testimony "is the only evidence of proximate cause relied upon, it must provide a significant causal link between the alleged negligence and the plaintiff's injuries, rather than a tenuous and hypothetical connection." *Ellis v. Oliver*, 323 S.C. 121, 125 (S.C. 1996); *Martasin v. Hilton Head Health Sys.*, 364 S.C. 430, 438 (S.C. Ct. App. 2005).

**B. Stent to Death – The Six-Step Causal Chain**

Plaintiff cannot establish the six steps in the causal chain in order to prove his allegation that Dr. Chaudhary's decision not to place a pancreatic stent in Ms. Yonce's pancreatic duct was

ultimately the proximate cause her death. Specifically, Plaintiff cannot link step one (post-ERCP pancreatitis) to step three (necessary intubation) within the alleged six step causal chain.

To establish the causal link between Dr. Chaudhary's decision not to place a pancreatic stent in Ms. Yonce's pancreatic duct, Plaintiff relies upon the testimony of John Baillie, M.B., Ch.B. (*See* ECF No. 29.) In his discovery deposition, taken on November 4, 2016, Dr. Baillie stated that he believed Ms. Yonce developed severe post-ERCP pancreatitis due to Dr. Chaudhary's decision not to place a stent in her pancreatic duct during the procedure. (ECF No. 67-2 at 2.) This belief that Ms. Yonce had post-ERCP pancreatitis is opposed by Ms. Yonce's own treating physicians as well as Defendants' expert witnesses. (*See* ECF No. 67-4 at 3; ECF No. 67-5 at 2; ECF No. 67-6 at 2.)

Dr. Baillie then opined that if Ms. Yonce was intubated on March 16th due to post-ERCP pancreatitis induced Acute Respiratory Distress Syndrome (ARDS), her need for intubation was caused by her acute pancreatitis, which was caused by Dr. Chaudhary's decision not to place a stent in her pancreatic duct during the ERCP. (*See* ECF No. 67-2 at 3.) Admittedly, this would sufficiently link the first and third steps in Plaintiff's causal chain. However, he concedes that if she was intubated on March 16th due to a previous aspiration of stomach contents into her lungs, that would not be related to her alleged post-ERCP pancreatitis. (*Id*. at 2-3.) Therefore, his testimony connecting the first and third links in Plaintiff's causal chain is conditional.

The cause of Ms. Yonce's respiratory arrest on March 16, 2016, when Dr. Zotovic attempted to intubate her, the fourth link in Plaintiff's causal chain, is unknown to Dr. Baillie as well as Ms. Yonce's treating physicians. (*Id*. at 3; ECF No. 67-6 at 3; ECF No. 67-7 at 2.) However, if the intubation was required due to Plaintiff's worsening pulmonary status, due to post-ERCP pancreatitis, Plaintiff's position is that the causal link is still complete. Plaintiff's

case relies on the assumption that Dr. Zotovic was forced to intubate Ms. Yonce due to a worsening pulmonary condition, caused by post-ERCP pancreatitis induced ARDS, and if not for the need to intubate to treat that condition, the unexplainable respiratory arrest would not have occurred. The second and third links in Plaintiff's causal chain are the key to their entire claim against Defendants. These links are also the weakest.

Dr. Baillie provided this conditional opinion before the physician who actually made the decision to intubate, Dr. Zotovic, was deposed on June 8, 2017. In Dr. Zotovic's deposition he clarified his medical record as to the cause of Ms. Yonce's ARDS and the reason he decided to intubate Ms. Yonce. Dr. Zotovic stated:

> **Mr. Weatherly**: With the benefit of hindsight as we sit here today, do you have any opinion as to what the cause of any acute respiratory distress syndrome in Ms. Yonce would have been either on the 14th or 15th, or even as we move up to the 16th?
>
> **Dr. Zotovic**: With the retrospective thinking, I think that she had ileus and probably microaspiration of gastric content.
>
> **Mr. Weatherly**: And tell me what went into your decision to intubate Ms. Yonce on the 16th?
>
> **Dr. Zotovic**: First, her respiratory function was getting worse. Her belly was distended. She was maybe aspirating because she -- if you have patients who have ileus, there is positive pressure in the abdomen. The pressure in the airways is negative. Distended abdomen, even in people who have a nasogastric tube in place doesn't mean that nasogastric tube is 100 percent protective. I see that she has acute respiratory status which is getting worse, so this is the most logical next step, is to intubate the patient, secure the airway, sedate, ventilate, oxygenate and prevent aspiration of gastric content.

(ECF No. 67-6 at 3.)

Dr. Zotovic made clear in his deposition that Ms. Yonce's worsening respiratory condition was caused by an ileus leading to aspiration, a condition unrelated to Ms. Yonce's arguably existent post-ERCP pancreatitis. Further, his decision to intubate her was for the purpose of protecting her airway from further aspiration, not because she was unable to breathe due to a

post-ERCP pancreatitis induced ARDS.

Dr. Zotovics's recent testimony would, therefore, trigger Dr. Baillie's alternate explanation for Ms. Yonce's need for intubation on March 16th to one that is unrelated to any post-ERCP pancreatitis. Dr. Baillie said specifically:

> **Mr. Weatherly**: If Ms. Yonce aspirated to cause an ARDS would that be unrelated to a potential pancreatitis?
>
> **Dr. Baillie**: Well, it's really related to if she's sedated and she's waking up and she's got stuff in her stomach and she vomits up, you know, you can aspirate that, so that's a straight line from one to the other, but I'm not sure what if you're asking me if pancreatitis leads to aspiration which it doesn't really.
>
> **Mr. Weatherly**: That was my question.
>
> **Dr. Baillie**: There's no straight line.
>
> **Mr. Weatherly**: Do you believe that there is a straight line between a possible pancreatitis in Ms. Yonce from 3/12 to 3/16 and the need for her to be intubated on 3/16?
>
> **Dr. Baillie**: Well, if she had ARDS from it, yes. If she got fluid overload, maybe. If she was developing a pneumonia, although this looks less like a pneumonia than fluid, that's another option.
>
> **Mr. Weatherly**: Do you believe that more likely than not Ms. Yonce had ARDS from pancreatitis on 3/16?
>
> **Dr. Baillie**: I can't say that for sure.
>
> **Mr. Weatherly**: Let's move to the cause of her respiratory arrest on 3/16. They attempted to intubate her on 3/16 and she had a respiratory arrest during that attempt, correct?
>
> **Dr. Baillie**: Right.
>
> **Mr. Weatherly**: Tell me how, if you can, you draw a line between a possible pancreatitis to her respiratory arrest, more likely than not?
>
> **Dr. Baillie**: I don't.

(ECF No. 67-2 at 3.) Dr. Baillie's conditional testimony, when combined with Dr. Zotovic's

testimony creates a complete break between links one (post-ERCP pancreatitis) and three (requiring to be intubated) in Plaintiff's proximate cause chain.

The facts are uncontroverted that Ms. Yonce was not intubated due to a worsening respiratory condition brought upon by severe post-ERCP pancreatitis, but rather to protect her airway from further aspiration likely caused by an unrelated ileus. Links two and three of Plaintiff's causal chain are broken. As such, links four (respiratory arrest and code, five (anoxic brain injury) and six (death) all become unrelated to Dr. Chaudhary's decision not to place a stent in Ms. Yonce's pancreatic duct. Instead, this intubation, unrelated to her alleged post-ERCP pancreatitis, led to her unexplained respiratory arrest which led to her brain damage and eventual death.

Plaintiff cannot set forth any evidence that establishes a causal link between Dr. Chaudhary's decision not to place a stent in Ms. Yonce's pancreatic duct during the March 12th ERCP and her eventual death and resulting damages. Her need to be intubated on March 16th was unrelated to any residual effects of post-ERCP pancreatitis, and her eventual respiratory arrest, anoxic brain injury and eventual death had no connection to Dr. Chaudhary's decision not to place a stent in her pancreatic duct during the ERCP four days earlier.

Defendants have presented to the court that it is their understanding that due to mental incapability, Plaintiff's sole expert, Dr. Baillie, will be unable to provide any additional testimony or opinions outside his November 4, 2016 deposition. (ECF No. 67-1 at 10.) As it currently stands, Dr. Baillie's discovery deposition testimony is insufficient to defeat this Motion. Given Dr. Zotovi's recent testimony and the fact that Plaintiff has not presented any additional expert testimony, Plaintiff no longer has the essential expert testimony for the required proximate cause element of her case to survive as a matter of law. As such, the court

dismisses Defendants from this action, with each party to bear their own costs.

## IV.　CONCLUSION

Based on the foregoing, the court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 67).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

April 6, 2018
Columbia, South Carolina